IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RAFAEL CALIXTRO-CALIXTRO, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CAUSE NO. 1:17-CV-394-LY |
| | § | |
| THE ESTATE OF JOHN HODGES, | § | |
| DEFENDANT. | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the court in the above-styled and numbered cause are Defendant's Motion to Dismiss filed September 11, 2018 (Dkt. No. 18), Plaintiff's Response to Defendant's Motion to Dismiss filed September 25, 2018 (Dkt. No. 19), and Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss filed October 1, 2018 (Dkt. No. 21). Having considered the motion, response, reply, and the applicable law, the court will deny the motion for the reasons that follow.

### I. BACKGROUND

On May 1, 2017, Plaintiff Rafael Calixtro-Calixtro ("Calixtro") filed a complaint against Defendant John David Hodges d/b/a Baron's Creek Farms ("Baron"), alleging violations of the Fair Labor Standards Act provisions (the "FLSA"), as well as breach of contract under Texas law. Calixtro filed the complaint on behalf of himself and 20 other similarly situated individuals employed by Baron during the same period as Calixtro. Baron was served with process on June 20, 2017, but failed to answer. On August 30, 2017, the Clerk of the Court entered default against Baron. On January 8, 2018, Calixtro filed a motion for default judgment as to Calixtro's individual claims. On February 15, 2018, Calixtro filed "Suggestion of Death and Motion to Substitute," in which he informed the court that Defendant John David Hodges died and

requested that his estate be substituted as the proper party. The record reflects that the representative of Hodge's Estate received the show-cause order on May 3, 2018 (Dkt. No. 13). Calixtro served Hodge's Estate on August 24, 2018. Hodge's Estate appeared by filing a motion to dismiss on September 11, 2018 (Dkt. No. 18).[1] On September 28, 2018, this court rendered an order setting aside the clerk's entry of default judgment (Dkt. No. 21).

The Estate now moves to dismiss Calixtro's suit for failure to state a claim. The Estate argues, in a four-page motion to dismiss, that Calixtro's FLSA claims are preempted by federal law, or, in the alternative, that Calixtro has failed to state a claim under the FLSA. The Estate also argues that there is no private cause of action for a breach of contract between an H–2A guest worker and his employer, or, in the alternative, that Calixtro has failed to state a claim for breach of contract under Texas law.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint need not contain detailed factual allegations, but in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[1] The court will refer to Hodges's Estate as "the Estate," unless otherwise noted or as needed for context.

2

inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2009).

**III. ANALYSIS**

The United States allows employers to bring foreign nationals into the United States to fill temporary-agricultural jobs under the H–2A guest-worker program. *See* 11 U.S.C. § 1188 *et seq.* To hire an H–2A guest worker, an employer must file a Form ETA-970 with the Department of Labor for approval. 20 C.F.R. § 655.130. Baron submitted an ETA-970 to the state workforce agency in November 2014. The submitted ETA-970 set the hourly rate that Baron intended to pay recruited H–2A workers at $10.86.[2] On November 20, 2014, Baron's ETA-970 was cleared for posting as a job order (the "2014 Job Order") on the state workforce agency's job clearance system. Under the 2014 Job Order, Baron agreed to abide by the minimum-wage provisions of the FLSA and its applicable regulations, as well as by H–2A program regulations. The federal minimum wage at the time of Calixtro's employment in 2015 was $7.25 per hour. 29 U.S.C. § 206(a)(1). Under the 2014 Job Order, Baron also agreed to comply with "other employment-related laws." Separately, H–2A regulations require that the employer must reimburse a worker for "transportation and daily subsistence expenses to the place of employment" upon a guest worker's completion of 50 percent of the work contract period. 20 C.F.R. § 655.122(p)(1).

---

[2] Under the H–2A program, an employer must agree in the ETA-790 to pay H–2A workers the higher of either the federal or state minimum age, or the "adverse effect wage rate," a "weighted average hourly wage for field and livestock workers." 20 C.F.R § 655.120(a); *id.* § 655.103(b); *id.* § 653.501.

3

The 2014 Job Order covered Calixtro's period of employment in 2015. During his employment for Baron in 2015, Calixtro alleges he performed the services contemplated in the 2014 Job Order. Calixtro worked 66.5 hours per workweek for 15 weeks, including during his first week of employment. Calixtro did not receive any payment from Baron during his first week of employment. For all workweeks except for the first week, Baron paid Calixtro a weekly sum of $400, resulting in an effective hourly wage of $6.01. Baron did not reimburse Calixtro for travel and meal expenses totaling $151.78, which were incurred during Calixtro's travel to Nuevo Leon, Mexico for pre-employment consular interviews. Baron also did not reimburse Calixtro for $252.05 in transportation and meal expenses incurred during Calixtro's trip from his home in San Luis de La Paz, Mexico to Fredericksburg, Texas.

### A. FLSA Claims

Calixtro asserts that Baron violated the FLSA's minimum-wage and overtime provisions. As a threshold matter, the Estate asserts that "that the enforcement of a FLSA claim by a H–2A worker is preempted by federal law." By what "federal law" is a federal law, the Fair Labor Standards Act, preempted? The court is left only to guess, as the Estate directs the court to no authority to support this proposition. The Estate's argument is without merit. The H–2A regulations themselves state that H–2A employers are subject to FLSA minimum-wage and overtime provisions. *See* 20 C.F.R. § 655.135(e) ("H–2A employers may also be subject to the FLSA. The FLSA operates independently of the H–2A program and has specific requirements that address payment of wages, including deductions from wages, the payment of Federal minimum wage and payment of overtime."). The regulations also state that H–2A employers "shall comply with applicable federal, State, and local employment-related laws and regulations." 20 C.F.R. § 655.103(b). This includes the federal minimum-wage requirement.

4

*See* 29 U.S.C. § 206(a)(4); 20 C.F.R. § 655.120(a) (providing that under the H–2A program an employer must pay an employee at least the higher of the federal or State minimum wage). Having established that the FLSA does apply to H–2A workers, the court will now consider whether Calixtro has stated a claim under the FLSA.[3]

To state a claim under for unpaid minimum-wage and overtime compensation under the FLSA, a plaintiff must allege that: (1) an employer-employee relationship existed with the defendant during the unpaid periods claimed; (2) the plaintiff engaged in activities within the coverage of the FLSA; and (3) the plaintiff was not exempt from the minimum-wage or overtime provisions of the FLSA. *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). A plaintiff may establish the second element by pleading that he was "employed in an enterprise engaged in commerce or in the production of goods for commerce." *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir.2007) (per curiam) (internal quotation marks omitted) (citing 29 U.S.C. § 207(a)). The FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" as one that "(A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1).

---

[3] The Estate initially asserts that Calixtro's FLSA claim is barred by the statute of limitations. But this, too, is incorrect. The FLSA has a two-year statute of limitations. *See* 29 U.S.C. § 255(a). Calixtro alleges his employment with Baron started on April 27, 2015. FLSA claims accrue on the day wages are due and not paid. 29 C.F.R. § 790.21(b); *Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 270–71 (5th Cir. 1987). Calixtro alleges he was paid on Friday. His first week's wages were therefore due on May 1, 2015, two years before he filed his complaint on May 1, 2017. Thus, Calixtro's claims are not barred by the statute of limitations.

Calixtro adequately alleges the first two elements. Calixtro alleges that Baron is an enterprise engaged in commerce within the meaning of the FLSA because its annual gross volume of sales exceeds $500,000 and its employees handle goods (fruits and vegetables) that have been moved or produced in commerce. 29 U.S.C. § 203(s)(1). Baron employed Calixtro on an H–2A guest-worker visa from about April 27, 2015, until about August 29, 2015. Calixtro's employment involved planting, growing, harvesting, sorting, grading, and packing vegetables for movement in commerce by Baron.

Under the FLSA's minimum-wage provision, an employer must pay an employee at least $7.25 per hour. 29 U.S.C. § 206(a)(1). And under the overtime provision, an employer must pay all non-exempt employees that work more than 40 hours in one workweek one and one-half time the employee's regular-hourly wage for all excess hours. 29 U.S.C. § 207(a). Calixtro adequately pleads that he was paid less than minimum wage and paid no overtime. Calixtro alleges he worked 66.5 hours per workweek for 15 weeks, including during the first week, between April 27, 2015, and August 28, 2015. Calixtro alleges that he did not receive any payment from Baron for his first week of employment in 2015. Calixtro further alleges that for all workweeks except for the first week, Baron paid him $400, resulting in an effective hourly wage of $6.01. The Estate has not attempted to show that Calixtro is exempt from either the wage or overtime provisions of the FLSA. *See* 29 U.S.C. § 213(b)(12); *Marshall v. Sundial Assc's*, 588 F.2d 120, 122 (5th Cir. 1979). As such, Calixtro states a claim for violation of the minimum-wage and overtime provisions of the FLSA.

### B. Breach-of-Contract Claim

The Estate argues that (1) there is no private cause of action for breach of contract available to H–2A workers under the Immigration and Nationality Act (INA); (2) the Wage and

Hour Division of Department of Labor has exclusive jurisdiction over enforcement of H–2A regulations; and (3) Calixtro has failed to state a breach-of-contract claim.

As to the first argument, Calixtro is not attempting to bring a claim under the INA. He brings a claim for violation of the FLSA and a state-law breach-of-contract claim under this court's supplemental jurisdiction. Federal courts routinely hear breach-of-contract claims from H–2A workers. *See e.g., Ruiz v. Fernandez*, 949 F. Supp. 2d 1055 (E.D. Wash. 2013), order clarified, No. CV-11-3088-RMP, 2013 WL 12167930 (E.D. Wash. June 24, 2013); *Sanchez et al v. Bland Farms, LLC*, 2011 WL 2457519, *13 (S.D.Ga. June 15, 2011); *Centeno–Bernuy v. Becker Farms*, 564 F.Supp.2d 166, 183 (S.D.N.Y.2008). As for the second argument, though the H–2A regulations do indeed vest the Wage and Hour Division with the authority to investigate claims and enforce violations of the law, *see* 29 C.F.R. § 501(c), the regulations do not state that the authority lies exclusively with the Wage and Hour Division. The Estate provides no authority or case holding that the Wage and Hour Division has exclusive jurisdiction over violations of H–2A regulations or state contract law.

"When a contract for services gives a place for performance, '[a]s a rule, that factor alone is conclusive in determining what state's law is to apply.'" *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 772 (5th Cir. 2016) (quoting *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 679 (Tex.1990)). Because Texas is the place in which Calixtro performed on the contract as well as where Baron's is located, the court will apply Texas law. To prove a claim for breach of contract under Texas law, a plaintiff must establish: (1) a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged due to the breach. *Brown v. Ogbolu*, 331 S.W.3d 530, 535 (Tex. App.—Dallas 2011, no pet.). Under H–2A regulations, absent a separate written agreement, "the work contract"

7

between an employer and an H–2A employee is "at . . . minimum . . . the terms of the job order and any obligations" required under federal law and regulations. 20 C.F.R. § 655.103(b). A "job order," in turn, "contain[s] the material terms and conditions of employment [and] is posted by the . . . [state workforce agency]" on its job clearance systems, based on the ETA–790 submitted by an employer to the state workforce agency. *Id.* The terms of the Job Order thus govern Baron's obligations to Calixtro.

Calixtro sufficiently pleads that the 2014 Job Order was an employment contract between Calixtro and Baron. Calixtro alleges he performed the services contemplated in the 2014 Job Order, and that Baron breached this order by failing to pay Calixtro the agreed-upon hourly rate, as well as by violating the FLSA minimum-wage and overtime provisions. Calixtro also pleads that Baron breached its contract by failing to reimburse Calixtro for Calixtro's pre-employment transportation and subsistence expenses, as it was required to do under the H–2A regulations. Calixtro pleads he suffered economic harm due to Baron's underpayment and failure to reimburse Calixtro. Accordingly, the court concludes Calixtro sufficiently pleads a claim for breach of contract under Texas law.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss filed September 11, 2018 (Dkt. No. 18) is **DENIED.**

IT IS FURTHER ORDERED that the parties are to submit to the court a Proposed Agreed Scheduling Order, in accordance with Federal Rule of Civil Procedure 26(f), that follows the form scheduling order of this court located on the website for the United States District Court for the Western District of Texas (www.txwd.uscourts.gov), the "Forms" tab, "Civil Forms," "Austin Division," "Proposed Scheduling Order for Judge Yeakel," **on or before November 30, 2018**.

SIGNED this 6th day of November, 2018.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE